UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

TONIANN GROSSMAN,

                    Plaintiff,

        -against-

LOWE'S STORE NO. 1597 and LOWE'S HOME
CENTERS, LLC,

                  Defendants.
_____

**MEMORANDUM & ORDER**
**23-CV-8014 (NGG) (MMH)**

NICHOLAS G. GARAUFIS, United States District Judge.

This is a personal injury tort action brought before this court in diversity jurisdiction. Plaintiff Toniann Grossman ("Grossman") alleges that the negligence of Defendant Lowe's Home Centers, LLC ("Lowe's") caused her to sustain injuries. Specifically, she claims a promotional display struck and injured her feet while she shopped on the premises of one of Defendant's stores in Staten Island, New York. Plaintiff claims that Defendant created and had actual and constructive notice of the allegedly dangerous and defective condition that caused her injury. Defendant denies any existence, creation, or notice—actual or constructive—of such a hazard.

Before the court is Defendant's motion for summary judgment on Plaintiff's lone negligence claim. Plaintiff has not cross-moved, but has requested spoliation sanctions against Defendant in her opposing brief. For the reasons explained below, the court GRANTS Defendant's motion for summary judgment and DENIES Plaintiff's request for spoliation sanctions.

## I. BACKGROUND

### A. Factual Background

Where possible, facts referenced in this opinion are drawn from the parties' statements of undisputed facts as E.D.N.Y. Rule 56.1

1

prescribes. (*See* Def.'s R. 56.1 Stmt. ("Def.'s 56.1") (Dkt. 25-2); Pl.'s 56.1 Reply Stmt. and Stmt. of Add'l Facts ("Pl.'s 56.1") (Dkt. 26).) In its discretion, the court may, but need not, consider additional facts outside those raised in the parties' Rule 56.1 statements. *Holtz v. Rockefeller & Co. Inc.*, 258 F.3d 62, 73 (2d Cir. 2001), *abrogated in part on other grounds by Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167 (2009). Unless otherwise noted, the facts are undisputed.

1.    Plaintiff's Accident

On July 4, 2021, Plaintiff was shopping at Defendant's store in Staten Island, New York. (Def.'s 56.1 ¶ 1; Grossman Dep. Tr. (Dkt. 25-3) at 32:18-33:7.) Plaintiff's sister, a Lowe's employee on staff that day, directed Plaintiff to the store's Inside Lawn and Garden Department to see an air conditioning enclosure fencing display. (Def.'s 56.1 ¶ 3; Grossman Dep. Tr. at 38:10-14.) Plaintiff approached the display—a Hoft Solutions Fence Kit—and visually inspected it for between two and four minutes. (Def.'s 56.1 ¶¶ 3, 8; Grossman Dep. Tr. at 44:22-45:10.)

Plaintiff did not notice if any of the display's slats were "loose" or if the enclosure was "wobbly." (Grossman Dep. Tr. at 47:16-21.) The display had vertical metal bars, between which sat horizontally stacked "Trex" composite slats. (Def.'s 56.1 ¶ 3; Grossman Dep. Tr. at 41:9-17.) The free-standing display was about three feet tall and wide, and it contained approximately six or seven slats. (Def.'s 56.1 ¶ 4; Grossman Dep. Tr. at 41:18-42:11.)

After inspecting the display, Plaintiff touched its "metal bar and the front of the slats in one movement, following which the entire display fell apart." (Def.'s 56.1 ¶ 9.) Plaintiff testified that immediately preceding the accident she "grazed" the display to determine the slats' material. (Grossman Dep. Tr. at 45:20-25.) After Plaintiff's contact with the display the slats then struck both of her feet, (Def.'s 56.1 ¶¶ 9, 13; Pl.'s 56.1 ¶¶ 9, 13), and she cried out. (Pl.'s 56.1 Section II ("II") ¶ 17; Grossman Dep. Tr. at 50:11-

2

12, 53:3-5.) This accident occurred at approximately 12:15 p.m. (Def.'s 56.1 ¶ 1; Pl.'s Resp. to Def.'s Interrogs. (Dkt. 25-10) at ECF p. 8.)

Two photographs taken at the scene after the accident appear to show at least three display slats strewn on the floor, with four slats and the vertical metal bars remaining in place. (Def.'s 56.1 ¶¶ 17-18.) It is unclear how long after the accident the photos were taken, but Plaintiff identified them as pictures of the display in question. (Grossman Dep. Tr. at 66:12-67:19, 68:22-69:19.)

A Lowe's employee responded and provided a cold water bottle for Plaintiff "to apply to her feet." (Def.'s 56.1 ¶ 15; Grossman Dep. Tr. at 53:6-11.) The scene was "chaotic," (Grossman Dep. Tr. at 54:20), but Plaintiff recalled one or two other Lowe's employees responding to the incident, (*Id.* at 55:16-21). Plaintiff claimed she heard a Lowe's employee say that someone did not "put [the display] together right," but she did not remember further details. (Pl.'s 56.1 ¶ II.19; Grossman Dep. Tr. at 53:6-9, 54:24-55:8.)

### 2. Lowe's Store Procedures

Lowe's has disclosed three store procedures relevant to this case: (1) display assembly by the Merchandising Service Team ("MST"); (2) the completion of Lowe's Safety Reports ("LSRs"); and (3) the filing of incident reports.

The Lowe's MST constructs in-store displays according to store "protocol" and "guidelines" and places products on shelves throughout the store. (*See* Def.'s 56.1 ¶¶ 35, 49; Beyers Dep. Tr. (Dkt. 25-4) at 29:14-24; Vega Dep. Tr. (Dkt. 25-5) at 71:24-72:18.) The MST built the display at issue in this case, (Vega Dep. Tr. at 74:23-75:2), though specific details regarding when the display was constructed, and by whom it was built, are not in the record. (Def.'s 56.1 ¶ 51; Vega Dep. Tr. at 81:13-84:5.) The display had been in the store for one to two months prior to the

accident.[1] (Def.'s 56.1 ¶ 74; Konara Aff. (Dkt. 25-7) ¶ 4.) No store employee received any complaints regarding the display prior to the incident. (Def.'s 56.1 ¶¶ 76-77; Konara Aff. ¶ 4.)

Managers at Lowe's complete LSRs daily "to document any safety issues in the store" before opening to customers.[2] (Def.'s 56.1 ¶¶ 43, 58; Coffey Aff. (Dkt. 25-6) ¶ 3; Vega Dep. Tr. 61:18-63:18.) Indeed, managers completed the store's LSRs, including one for the Inside Lawn and Garden Department, on the day of Plaintiff's accident. (Def.'s 56.1 ¶¶ 57-58; Coffey Aff. ¶¶ 3-4.) The relevant manager cited no safety issues with either the "Garden Center" or the "Outdoor Power Equipment (OPE)" areas and gave both a "thumbs up" in the July 4, 2021 LSRs. (Def.'s 56.1 ¶ 46; Coffey Aff. ¶ 4.) Specifically, the relevant Lowe's manager found "no problems with the display on July 4, 2021 when [he] inspected it and there were no prior accidents involving the fence display." (Coffey Aff. ¶ 5.) Nor did the manager find "loose slats or instability during the inspections of the display." (*Id.*)

As a general matter, Lowe's employees document incident reports after responding to accidents in the store. (*See* Vega Dep. Tr. at 29:5-31:9.) A manager on duty submitted such a report for Plaintiff's accident. (*See* Lowe's Incident Report (Dkt. 28-2).) The report identified Plaintiff and the Staten Island store where the incident occurred, though it listed the time of the accident as 3:00 P.M. (*Id.* at ECF p. 2.) The report found that Plaintiff had "touched the fence display" and that "4 of the deck panels fell

---

[1] Plaintiff's conclusory denials of Defendant's statement of material facts are insufficient to create a genuine dispute of material fact—only evidence can do so. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

[2] Likewise, Plaintiff's boilerplate assertions that Defendant failed to produce sufficient documentation to establish its right to summary judgment is meaningless without any contrary evidence. As explained below in Section III.A, Plaintiff's misapprehension of the appropriate summary judgment standard supplies her erroneous basis for such contentions.

and hit . . . both [her] feet." (*Id.* at ECF p. 3.) Plaintiff's resulting injury included "a cut on her left foot and . . . a black and blue mark on her right foot," for which the store provided assistance. (*Id.*) A manager filed the report on July 4, 2021—the day of the incident—and reported it to Sedgwick, a third party that manages injury and accident claims for Lowe's. (*See* Lowe's Incident Report at 2; Vega Dep. Tr. at 31:15-19.)

### 3. Video Evidence

Sedgwick requests the preservation of surveillance camera video recordings relevant to in-store incidents. (Vega Dep. Tr. at 37:22-38-12.) Lowe's security footage recordings are stored in the cloud for three months. (*Id.* at 37:2-38:12.) Although Lowe's is unsure if Sedgwick made such a request in Plaintiff's case, Lowe's counsel claims that Defendant searched unsuccessfully for footage of the incident and represented the same to Plaintiff. (*See* Def.'s Reply (Dkt. 28) at 15.)

### B. Procedural Background

Plaintiff sued Defendant and its individual store location in the Supreme Court of New York, Richmond County, in June 2023. (Pl.'s Summons & Compl. (Dkt. 1-1).) Lowe's answered the complaint in August 2023, raising affirmative defenses. (*See* Def.'s Verified Answer ("Answer") (Dkt. 25-9) ¶¶ 60-79.) Defendants removed the case to the United States District Court for the Eastern District of New York in October 2023, based on diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*See* Not. of Removal (Dkt. 1).)

Defendant claimed that the individual store location, "Lowe's Store No. 1597," was an illegitimate entity for suit, since the named defendant is a mere designation of Defendant Lowe's Home Centers, LLC. (*See* Not. of Removal ¶ 6.) Accordingly, only

Lowe's Home Centers, LLC answered the complaint.[3] (*See* Answer at ECF p. 14.)

Discovery proceeded from December 11, 2023 to February 12, 2025, when Magistrate Judge Marcia Henry denied Plaintiff's final discovery extension request. (*See* Discovery Scheduling Order (Dkt. 9) (setting original discovery timeline); Order Denying Plaintiff's Mot. for Discovery Extension dated 2/12/2025.) Upon the conclusion of discovery, Defendant filed its Motion for Summary Judgment, which Plaintiff opposed, and to which Defendant replied, on June 10, 2025. (*See* Def.'s Br. in Supp. of Summ. J. ("Def.'s Mot.") (Dkt. 25-12); Pl.'s Mem. in Opp'n (Pl.'s Opp'n) (Dkt. 27); Def.'s Reply.) Plaintiff did not cross-move for summary judgment. However, her opposition requests, at minimum, adverse inference sanctions against Defendant for alleged spoliation. (*See* Pl.'s Opp'n at 15.)

## II. LEGAL STANDARDS

### A. Summary Judgment

Federal Rule of Civil Procedure 56 governs the procedural law applicable to motions for summary judgment. The moving party prevails on summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material when it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.,* 477

---

[3] Lowe's is correct that its individual store, a designation rather than a corporate entity, was not a proper entity for suit because the individual store is not a "real and substantial part[y] to the controversy." *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 460 (1980). As such, complete diversity exists between Plaintiff and Lowe's. *Cf. id.* at 460-61, 465 (maintaining diversity jurisdiction based on the citizenship of trustees—who were real and substantial parties to the controversy—rather than shareholders who were "disregard[ed]" as merely "nominal or formal parties").

U.S. 242, 248 (1986), and a dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Gayle v. Gonyea*, 313 F. 3d 677, 682 (2d Cir. 2002).[4] However, "[w]hen no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

Demonstrating the opposing party's lack of evidence on a necessary element of its claim is sufficient to grant summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the burden to show the absence of disputed facts. *Liberty Lobby*, 477 U.S. at 256. The court must view the evidence in the light most favorable to the nonmoving party and "all justifiable inferences are to be drawn in [that party's] favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). There is "no . . . requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim." *Id.* at 323; *see also Parker v. Sony Pictures Ent., Inc.*, 260 F.3d 100, 111 (2d Cir. 2001) ("A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on plaintiff's part . . . .").

To survive a summary judgment motion, the nonmovant must identify specific, contradictory facts to establish the existence of a genuine issue of disputed material fact. *Celotex*, 477 U.S. at 323-24. The nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir.

---

[4] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and any addition of emphasis or alteration to the original in quoted text is adopted.

2007). The court relies on "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits" to determine if summary judgment is appropriate. *Ford v. Reynolds*, 316 F.3d 351, 354 (2d Cir. 2003); *see also* Fed. R. Civ. P. 56(c).

### B.    Negligence and Premises Liability

Under New York law, "[t]o establish a prima facie case of negligence, a plaintiff must demonstrate (1) a duty owed by the defendant to the plaintiff, (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon ex rel. Solomon v. City of New York*, 66 N.Y.2d 1026, 1027 (1985); *see also Borley v. United States*, 22 F.4th 75, 78 (2d Cir. 2021) (applying the same three elements under New York negligence law). These elements are addressed in turn below.

#### 1.    Duty in Premises Liability Actions

As to the first element, in premises liability cases, "[a] property owner, or a party in possession or control of real property, has a duty to maintain the property in a reasonably safe condition." *Bennett v. Alleyne*, 163 A.D.3d 754, 754-55 (2d Dep't 2018) (citing *Kellman v. 45 Tiemann Assoc.*, 87 N.Y.2d 871, 872 (1995)). The duty depends not on the status of the plaintiff as "trespasser, licensee or invitee" but requires a "standard of reasonable care . . . no different than that applied in the usual negligence action." *Basso v. Miller*, 40 N.Y.2d 233, 239, 241 (1976).

#### 2.    Breach of Duty

The second element is breach of duty. In the premises liability context, a plaintiff must show that there was "a dangerous or defective condition that caused the accident." *Moy v. Target Corp.*, 629 F. Supp. 3d 205, 209-10 (S.D.N.Y. 2022); *Boutsis v. Home Depot*, 371 F. App'x 142, 143 (2d Cir. 2010) (summary order); *see also Winder v. Exec. Cleaning Servs., LLC*, 91 A.D.3d 865, 865 (2d Dep't 2012). A plaintiff then bears the burden to demonstrate

8

at least one of three independently sufficient bases for defendant's breach. To be liable, the defendant must have either (i) created; (ii) had actual notice of; or (iii) had constructive notice of the dangerous or defective condition. *Moy*, 629 F. Supp. 3d at 210; *Tenay v. Culinary Tchrs. Ass'n of Hyde Park*, 281 F. App'x 11, 13 (2d Cir. 2008) (summary order) (quoting *Baez v. Jovin III, LLC*, 41 A.D.3d 751, 752 (2d Dep't 2007)).

The creation of a dangerous or defective conditions must arise from a defendant's "affirmative act[s]." *Cook v. Rezende*, 32 N.Y.2d 596, 599 (1973); *Fink v. Bd. of Educ.*, 498 N.Y.S.2d 440, 441 (2d Dep't 1986); *see also Feder v. Target Stores*, 15 F. Supp. 3d 253, 256 (E.D.N.Y. 2014). To have actual notice, a defendant must "receive complaints or similarly be alerted to the existence of the dangerous condition." *Nussbaum v. Metro-N. Commuter R.R.*, 603 F. App'x 10, 12 (2d Cir. 2015) (summary order) (citing *Matcovsky v. Days Hotel*, 782 N.Y.S.2d 64, 65 (1st Dep't 2004)); *see also Whitley v. Buffalo Mun. Hous. Auth.*, 824 N.Y.S.2d 509, 510 (4th Dep't 2006) (finding no actual notice where neither the plaintiff nor any other person reported the condition at issue to the defendant).

Constructive notice, meanwhile, requires that "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Gordon v. Am. Museum of Nat. Hist.*, 67 N.Y.2d 836, 837 (1986). A plaintiff can alternatively establish constructive notice with a either a showing that (1) "a recurring dangerous condition in the area of the accident was routinely left unaddressed by the defendant," *Borley*, 22 F.4th at 79 (quoting *Mullin v. 100 Church LLC*, 12 A.D.3d 263, 264 (1st Dep't 2004)), or (2) where a defendant fails to undertake a "reasonable inspection [that] would have discovered" the dangerous condition, *see Kirbaran v. Target Corp.*, 720 F. Supp. 3d 267, 278 (S.D.N.Y. 2024), *aff'd*, No. 24-715, 2025 WL 973050 (2d Cir. Apr. 1, 2025)

9

(summary order); *see also Wynn ex rel. Wynn v. T.R.I.P. Redev. Assocs.*, 745 N.Y.S.2d 97, 102 (3d Dep't 2002) (stating the same).

### 3. Res Ipsa Loquitur

Under limited circumstances, the doctrine of *res ipsa loquitur* ("RIL") allows for negligence to be inferred against a defendant solely because of an accident's occurrence. *Dermatossian v. New York City Transit Auth.*, 67 N.Y.2d 219, 226 (1986). When an accident could not have occurred but for a party's negligence, the doctrine may be invoked. *Id.* The factfinder may then decide the issue of negligence on the basis of RIL but is not compelled to do so. *Id.* (citing *Foltis, Inc. v. City of New York*, 287 N.Y. 108, 115-20 (1941)); *see also Coakley v. Regal Cinemas, Inc.*, 134 N.Y.S.3d 74, 78 (2d Dep't 2020) (same).

For a plaintiff to invoke the doctrine, "(1) the event must be of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; [and] (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff." *Dermatossian*, 67 N.Y.2d at 226 (quoting *Corcoran v. Banner Super Mkt., Inc.*, 19 N.Y.2d 425, 430 (1967)); *see also Union Mut. Fire Ins. Co. v. Ace Caribbean Mkt.*, 64 F.4th 441, 448 (2d Cir. 2023) (same). New York courts in practice have softened the "exclusive control" element. *See Union Mut.*, 64 F.4th at 448 (citing *Ebanks v. N.Y.C. Transit Auth.*, 70 N.Y.2d 621, 622 (1987)). They permit plaintiffs to satisfy the element by showing that is more likely than not that the defendant is responsible for any negligence related to plaintiff's accident. *See id.* at 448; *Dermatossian*, 67 N.Y.2d at 227.

### C.    Spoliation

Spoliation involves "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West v.*

10

*Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999).[5] Federal courts' powers to remedy spoliation are broadly discretionary. *Id.* A party seeking an adverse inference instruction based on the destruction of evidence must establish:

> "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind'; and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002); *Hoffer v. Tellone*, 128 F.4th 433, 438 (2d Cir. 2025) (clarifying that the second element requires intent, more than negligence or knowing acts, in light of the 2015 amendment to Rule 37(e)(2)).

In cases of videographic surveillance footage, defendants must "preserve any video surveillance footage of a [p]laintiff's accident" where the prospect of litigation could be "reasonably anticipated." *Matteo v. Kohl's Dep't Stores, Inc.*, No. 09-CV-7830 (RJS), 2012 WL 760317, at *3 (S.D.N.Y. Mar. 6, 2012), *aff'd* 533 F. App'x 1 (2d Cir. 2013) (summary order). Rule 37(e)(2) continues to govern this duty, however, requiring a culpable state of mind to impose adverse inference sanctions. Regardless, at summary judgment the court must consider the evidence in the light

---

[5] The parties cite to both New York State and federal law standards for spoliation. While some courts in this district have concluded that in diversity cases "federal law, not state law, governs the Court's imposition of spoliation sanctions," this court need not decide the issue because "both jurisdictions adhere to comparable standards." *Schwarz v. FedEx Kinko's Off.*, No. 08-CV-6486 (THK), 2009 WL 3459217, at *6 n.4 (S.D.N.Y. Oct. 27, 2009), *and Luna v. Am. Airlines*, 676 F. Supp. 2d 192, 202 n.8 (S.D.N.Y. 2009), *aff'd sub nom. Luna v. Am. Airlines, Inc.*, 578 F. App'x 58 (2d Cir. 2014) (summary order).

most favorable to the nonmoving party. *Liberty Lobby*, 477 U.S. at 256. As such, the court must accept as true a plaintiff's "plausible account of the accident" despite any absent video evidence. *Matteo v. Kohl's Dept. Stores, Inc.*, 533 F. App'x 1, 3-4 (2d Cir. 2013) (summary order).

## III. DISCUSSION

### A.  Governing Standard for Summary Judgment

The parties disagree as to the governing standard for summary judgment. Defendant asserts that it is sufficient to demonstrate Plaintiff's lack of evidence as to a material element of her negligence claim under Rule 56(a). (*See* Def.'s Reply at 2 (citing *Parker*, 260 F.3d at 111; *Celotex*, 477 U.S. at 324).) Plaintiff, however, contends that New York's higher summary judgment burden governs, which would carry two important implications for adjudicating the motion. First, that Defendant's "burden cannot be satisfied merely by pointing out gaps in the plaintiff[']s case." (Pl.'s Opp'n at 4 (citing *Baines v. G&D Ventures, Inc.*, 64 A.D.3d 528, 529 (2d Dep't 2009)).) Second, the prima facie case would shift to Defendant so that it must prove that it "neither created the hazardous condition, nor had actual or constructive notice of its existence."[6] (*See* Pl.'s Opp'n at 3 (citing *Rodriguez v. 705-7 E. 179th St. Hous. Dev. Fund Corp.*, 913 N.Y.S.2d 189, 191 (1st Dep't 2010)).)

The court agrees with Defendant. Rule 56 displaces New York's higher summary judgment burden. "[F]ederal courts sitting in diversity apply state substantive law and federal procedural law."

---

[6] Under the heightened summary judgment burden for premises liability claims, a defendant's failure to establish a prima facie case will result in denial. *See, e.g., Jones v. 234-36 Elmendorf Street, LLC*, 228 N.Y.S.3d 285, 285 (2d Dep't 2025) (reversing the trial court on the grounds that (1) defendant had not disproved constructive notice and (2) "defendants failed to submit sufficient evidence as to when [the property owner] had last cleaned or inspected" the site of plaintiff's accident).

*Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996). When a Federal Rule of Civil Procedure "answers the question in dispute. . . . it governs—[state] law notwithstanding—unless it exceeds statutory authorization or Congress's rulemaking power." *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (plurality opinion). The Supreme Court reaffirmed this proposition earlier this term. *Berk v. Choy*, 146 S. Ct. 546, 557 (2026) (quoting *Shady Grove*, 559 U.S. at 409). To determine whether a Federal Rule is "valid . . . the only question is whether it 'really regulates procedure.'" *Berk*, 146 S. Ct. at 557 (quoting *Sibbach v. Wilson & Co., Inc.*, 312 U.S. 1, 14 (1941)).

Here, Rule 56 applies because it does really regulate procedure, "answers the question in dispute," and complies with the Rules Enabling Act and the Constitution. *Kirbaran v. Target Corp.*, No. 24-715, 2025 WL 973050, at *2 (2d Cir. Apr. 1, 2025) (summary order) (rejecting the plaintiff's argument "that the district court erred by applying the federal summary judgment standard instead of the New York standard" in a tort case); *Tenay*, 281 F. App'x at 13 (applying Rule 56 to find that a tort defendant prevailed at summary judgment because the plaintiff "fail[ed] to adduce evidence regarding the elements of his claim") (citing *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)); *Bennett v. Home Depot USA, Inc.*, No. 23-CV-8622 (NRM) (AYS), 2026 WL 63313, at *3 (E.D.N.Y. Jan. 8, 2026) (determining in premises liability case that "the [Rule 56] federal standard plainly applies," that "every circuit court that has addressed this issue has held the same," and citing cases for that proposition). Thus, Defendant need not make a prima facie showing that it did not breach its duty of care. It need only demonstrate that Plaintiff lacks evidence as to a necessary element of her claim on which she would bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

### B.   Negligence

New York's substantive negligence law applies to this diversity suit. *See Gasperini,* 518 U.S. at 427 (requiring that federal courts sitting in diversity apply state substantive law). "The substantive law," *i.e.,* New York law, "will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby,* 477 U.S. at 248.

As addressed below, Plaintiff fails to demonstrate a disputed issue of material fact as to Defendant's alleged negligence. No genuine disputes exist as to any of the elements of negligence under New York law. As such, Defendant is entitled to summary judgment on Plaintiff's negligence claim.

Because Plaintiff misapprehends the summary judgment standard, she repeatedly argues that an absence of evidence in the record undermines Defendant's prima facie case and weighs against Defendant's motion. (*See, e.g.,* Pl.'s Opp'n at 2, 5-6, 8.) However, the conclusion to be drawn is quite the opposite: a dearth of evidence in the record weighs against Plaintiff's assertion that there remain triable issues of disputed material fact such that Defendant should be denied summary judgment. *See, e.g., Celotex,* 477 U.S. at 322. Plaintiff's RIL argument also fails to raise an issue of material fact. In sum, this court finds no disputed issue of material fact in the record, and Defendant has demonstrated its entitlement to summary judgment as a matter of law on Plaintiff's negligence claim.

#### 1.   RIL

To apply RIL, Plaintiff must establish that: (1) the accident is one that "ordinarily does not occur in the absence of someone's negligence"; (2) "an agency or instrumentality within the exclusive control of the defendant" caused the event; and (3) the accident was not due to any "voluntary action or contribution" of Plaintiff.

14

*Dermatossian*, 67 N.Y.2d at 226 (quoting *Corcoran*, 19 N.Y.2d at 430). A finding of RIL is "exceptional." *Tsvetkov v. United States*, No. 18-CV-2761 (NGG) (CLP), 2022 WL 986163, at *8 (E.D.N.Y. Mar. 31, 2022).[7] Plaintiffs claims are not. She specifically fails to demonstrate prongs (2) and (3) of the test—that the instrumentality was in Defendant's exclusive control and that Plaintiff did not contribute to the accident.

### a.   Exclusive Control

The display was not in Lowe's exclusive control. Generally, objects accessible only to Defendant's employees, or inaccessible to the public, are under exclusive control of a defendant. *Kambat v. St. Francis Hosp.*, 89 N.Y.2d 489, 460 (1997) (holding that medical equipment during a surgery was only accessible to defendant); *Durso v. Wal-Mart Stores, Inc.*, 705 N.Y.S.2d 157, 158 (4th Dep't 2000) (rejecting a defendant's contention that boxes for restocking, ten feet off the ground, were not in defendant's exclusive control). Exclusive control for retail stores is not found, as Defendant correctly points out, for merchandise directly available for purchase by third-party shoppers. (Def.'s Reply at 8); *Ascher v. Target Corp.*, 522 F. Supp. 2d 452, 457 (E.D.N.Y. 2007) (finding "it . . . settled that the objects in a retail store," like the falling sauté pot there at issue, "are not under the exclusive control of the store"); *Ruggiero v. Waldbaums Supermarkets, Inc.*, 661 N.Y.S.2d 37, 39 (2d Dep't 1997) (finding a supermarket not to be in exclusive control of a stack of cans ten hours after the store opened); *Fleischer v. Melmarkets, Inc.*, 571 N.Y.S.2d 509, 510 (2d Dep't 1991) (exclusivity vitiated by a five-year-old child pushing an empty shopping cart into the ketchup display). More broadly, "absent specific factual circumstances

---

[7] "Over the last century, the Appellate Division has held barely more than a dozen times that a plaintiff is entitled to summary judgment or a directed verdict in [RIL] cases." *Morejon v. Rais Const. Co.*, 818 N.Y.S.2d 792, 798 (2006).

that reduce the likelihood of third-party access, courts generally decline to find 'exclusive control' where premises are heavily trafficked by the public." *Maitland v. Target Corp.*, No. 20-CV-3892 (MKB), 2023 WL 6282918, at *8 (E.D.N.Y. Sept. 26, 2023), *aff'd on other grounds*, No. 23-7520, 2024 WL 5182674 (2d Cir. Dec. 20, 2024) (summary order). In that case, Chief Judge Brodie found that Target did not have exclusive control over a shelf in its store that fell, striking plaintiff, because the public had access to the premises, as well as the shelf, for "at least fifteen hours prior to the incident." *Id.*

The display in this case was not in Lowe's exclusive control. It had been in place upwards of a month, (Def.'s 56.1 ¶¶ 36, 74; Konara Aff. ¶ 4), the store had been open for more than six hours before Plaintiff's accident, (Def.'s 56.1 ¶¶ 1, 29; Beyers Dep. Tr. at 12:17-19), and customers could interact with and touch the display, (Vega Dep. Tr. at 101:3-7), which was "continuously available" to the public. *Dermatossian*, 67 N.Y.2d at 228; *see also Maitland*, 2023 WL 6282918, at *8. The time period here is shorter than that both in *Ruggerio* (ten hours) and *Maitland* (fifteen hours). 661 N.Y.S.2d at 39; 2023 WL 6282918, at *8. As the Lowe's display was available to any number of third parties for an extended period, and as Plaintiff "fails to identify the cause of the accident," she "has not shown, and the record provides no basis from which a reasonable jury could conclude that 'other possible controllers were not the negligent cause' of the incident." *Maitland*, 2023 WL 6282918, at *8 (quoting *Union Mut.*, 64 F.4th at 448). Thus, Plaintiff is unable to meet this element and her RIL claim fails.

> b.    *Plaintiff's Contribution*

Even if Plaintiff had satisfied the exclusive control element, Plaintiff fails to prove that her own actions did not contribute to the accident. She argues that she was "an innocent party free from

16

negligence," (Pl.'s Opp'n at 5), seeking to prove the lack of "voluntary action or contribution" to the accident on her part. *Dermatossian*, 67 N.Y.2d at 226. Defendant retorts that Plaintiff's mere touch precludes this argument. (Def.'s Reply at 10.)

Defendant is again correct here. A defendant may prevail even in cases where a plaintiff only fails to sufficiently rule out the possibility of her contribution to her accident. *See Ascher*, 522 F. Supp. 2d at 457 (precluding the application of RIL where the possibility remained that a plaintiff herself dislodged the object that struck her, despite not admitting to touching the object before it fell); *Ortiz ex rel. Ortiz v. Splish Splash at Adventureland, Inc.*, 851 N.Y.S.2d 59, 59 (Sup. Ct. 2007) (barring application of RIL because plaintiff failed to demonstrate that "his own actions did not contribute to the injury"). And where a plaintiff intentionally touches an instrumentality, that touching qualifies as contributory. *Forgione v. Nickels & Dimes, Inc.*, No. 12-CV-0869 (GTS) (CFH), 2014 WL 4626304, at *6 (N.D.N.Y. Sept. 15, 2014) (finding a potential contribution sufficient to bar RIL when plaintiff "placed her flip-flop shoe on the piece of laminate . . . shortly before the [a]ccident").

Here, while not apparently negligent herself on the undisputed facts, Plaintiff admitted to touching the display immediately preceding its collapse. (*See* Def.'s 56.1 ¶ 9; Grossman Dep. Tr. 45:15-46:17.) The facts are worse still for Plaintiff than they were in *Ascher*, since Plaintiff admitted to touching the display immediately before it fell. (*Id.*) Plaintiff offers only speculation as to possible negligence on behalf of Defendant while admitting that the display fell apart after her interaction with it. Plaintiff thus fails to rule out "any voluntary action or contribution" on her part, as she must. *Dermatossian*, 67 N.Y.2d at 226.

Since Plaintiff shows neither that the display was within Defendant's exclusive control, nor that Plaintiff's own voluntary action

did not contribute to her accident, the doctrine of RIL is inapplicable as a matter of law.

### 2. Prima Facie Negligence

#### a. *Duty*

Having found RIL inapplicable, the court now turns to the elements of negligence. To prevail on its motion, Defendant need only show Plaintiff's lack of evidence to support any one of the necessary elements of her claim. *Celotex*, 477 U.S. at 322; *Kirbaran*, 2025 WL 973050, at *2 (2d Cir.). Defendant does not dispute Plaintiff's argument that it owed her a duty of ordinary care on Lowe's store premises. (*See* Def.'s Mot. at 4-5 (beginning its negligence argument with the breach of duty element).) Since Plaintiff's accident concededly occurred when she was a customer in a Lowe's store, (Def.'s 56.1 ¶ 1), there is no genuine dispute of material fact that Defendant owed a duty of "reasonable care" to Plaintiff. *Basso*, 40 N.Y.2d at 239, 241.

#### b. *Breach of Duty*

##### i. Establishment of Defective or Dangerous Condition

As a threshold matter, a plaintiff must establish that a defective or dangerous condition existed on the premises. *Donnelly v. St. Agnes Cathedral Sch.*, 964 N.Y.S.2d 262, 263 (2d Dep't 2013) (citing *Fontana v. R.H.C. Dev., LLC*, 892 N.Y.S.2d 504, 506 (2d Dep't 2010)). A plaintiff cannot prevail where they are "unable to identify the defect that caused [their] injury." *Siegel v. City of New York*, 928 N.Y.S.2d 1, 3 (1st Dep't 2011) (granting summary judgment when plaintiff could not identify the defect in the sidewalk); *see also Vasquez v. United States*, No. 14-CV-1510 (DF), 2016 WL 315879, at *5-6 (S.D.N.Y. Jan. 15, 2016) (holding that plaintiff's lack of identification of the dangerous condition failed to satisfy the element). In the retail context, a victim struck by a falling object could not establish the existence of a dangerous or

defective condition simply because the object fell. *See, e.g., Ascher*, 522 F. Supp. 2d at 458 (finding speculation as to the cause of a falling object inadequate to establish a dangerous or defective condition); *see also Pena v. Women's Outreach Network, Inc.*, 35 A.D.3d 104, 110 (1st Dep't 2006) ("[A] simplistic deduction of cause from effect fails to show a defect, must less fault.").

Plaintiff argues that her accident implies that a dangerous or defective condition existed. This argument functions similarly to Plaintiff's assertion of RIL, which the court rejected above. Plaintiff's testimony that the fencing display collapsed, (Def.'s 56.1 ¶ 9), without more, does not establish that the display was dangerous or defective. In *Vasquez*, a plaintiff's similar testimony—identifying a door saddle as dangerous but without specific allegations that it was "loose, damaged, improperly designed, or otherwise dangerous or defective"—failed to raise a genuine issue of disputed material fact as to whether a dangerous condition existed. 2016 WL 315879, at *6; *see also Siegel*, 928 N.Y.S.2d at 3. Plaintiff fares no better with her additional claim that she heard a Lowe's employee say that the display was not "put . . . together right." (Grossman Dep. Tr. at 53:6-9, 54:24-55:8.) This bald assertion without further evidentiary support fails to establish the existence of a dangerous or defective condition. Plaintiff's "speculation and conjecture" weighs against a finding of a dangerous or defective condition. *Boyko v. Sam's Club-Members Only*, 975 F. Supp. 488, 489 (W.D.N.Y. 1997).

In sum, Plaintiff speculates that a dangerous or defective condition existed but does not raise a triable issue of material fact. This finding sustains Defendant's motion for summary judgment on the negligence claim. *See Vasquez*, 2016 WL 315879, at *5 (holding that where plaintiff failed to raise a triable issue of material fact as to the existence of a dangerous or defective condition, "[d]efendant is entitled to summary judgment on this basis alone").

19

ii.     Creation of Condition

Similarly, Plaintiff fails to provide sufficient evidence to establish that Lowe's created any dangerous condition. The parties agree that the MST built the display at issue and that such displays are generally constructed by the MST according to its guidelines. (*See* Def.'s 56.1 ¶¶ 49-51.) Plaintiff offers no rebutting evidence to demonstrate faulty construction of the display, and simply blames Defendant for these shortcomings. (*See* Pl.'s Opp'n at 5-6 ("However, how could the Plaintiff investigate this incident herself or take photographs while on the ground with a swollen foot?").) Plaintiff incorrectly inverts the relevant standard by arguing that Defendant failed to prove its construction of the display was not negligent. *See supra* Section III.A.

To show a defendant's creation of a dangerous condition "requires 'some affirmative act' on the part of the defendant." *Feder*, 15 F. Supp. 3d at 256. Plaintiff argues that because Lowe's built the display, it created a dangerous condition. (*See* Pl.'s Opp'n at 5.) But merely asserting that the construction of the display must have created a dangerous condition because the display fell on Plaintiff again relies on the logic of RIL. Although "circumstantial evidence may be sufficient" in some cases, "a plaintiff cannot avoid summary judgment . . . through mere speculation and conjecture." *Feder*, 15 F. Supp. 3d at 256; *see also Krichevskaya v. City of New York*, 817 N.Y.S.2d 103, 105 (2d Dep't 2006).

Importantly, a defendant's inaction, including "evidence of a failure to implement a policy," falls short of creating a dangerous condition. *Caicedo v. Home Depot U.S.A., Inc.*, No. 21-CV-2219 (OEM) (CLP), 2026 WL 25367, at *4 (E.D.N.Y. Jan. 5, 2026) (citing *Kirbaran*, 720 F. Supp. 3d at 276 (S.D.N.Y.)). In *Caicedo*, Judge Merchant held that no reasonable juror could find that the defendant created a hazard through an insufficient inspection policy of retail store aisles. 2026 WL 25367, at *4-5. Here, Plaintiff implicitly argues that Lowe's MST and LSR policies were

20

inadequate and permitted a dangerous condition to exist. (*See* Pl.'s Opp'n at 5, 7 (casting doubt on Lowe's policies for "only conduct[ing] visual inspections").) Yet Plaintiff has failed to point the court to any disputed issue of material fact as to the creation of a hazard that rises above mere speculation. *See Cook v. Rezende*, 32 N.Y.2d 596, 599 (1973) ("Neither his duty nor his potential liability is to be predicated upon his 'permitting' a dangerous condition to exist."); *Kirbaran*, 720 F. Supp. 3d at 276 (rejecting a plaintiff's argument for the creation of a dangerous or defective condition in a premises liability action due to insufficient evidence of a defendant's "affirmative act").

### iii.  Actual and Constructive Notice

Even still, Plaintiff fails to present sufficient evidence of actual and constructive notice. Although she states that "[t]he only disputed issue is whether the Defendant should have obtained actual or constructive notice concerning the incident," Plaintiff only argues that Defendant's visual inspections were insufficient. (Pl.'s Opp'n at 13.) Then, she asserts that Defendant failed to properly investigate the accident *after* the incident. (*Id.* at 6-7.) Defendant argues in opposition that it had no actual or constructive notice. (Def.'s Mot. at 11-17.)

Plaintiff fails to meet the actual notice standard. "Actual notice requires that a defendant receive complaints or similarly be alerted to the existence of the dangerous condition." *Nussbaum*, 603 F. App'x at 12 (citing *Matcovsky*, 782 N.Y.S.2d at 65). On the facts before the court, Lowe's "never received any complaints" about the display at issue, despite its presence in the store for at least one month. (*See* Def.'s 56.1 ¶¶ 19, 36, 64, 75; Beyers Dep. Tr. at 34:3-13; Coffey Aff. ¶ 5.) Plaintiff offers no evidence to the contrary, and thus creates no genuine dispute of material fact.

Plaintiff also fails to provide evidence establishing that Lowe's had constructive notice of a hazard. To prove constructive notice, the hazard "must be visible and apparent" and it must be present

21

"for a sufficient length of time prior to the accident" to allow a defendant to remedy the condition. *Gordon*, 67 N.Y.2d at 837. General awareness of a dangerous condition does not constitute constructive notice, as "notice of the 'particular condition' at issue" is required. *Caicedo*, 2026 WL 25367, at *6 (quoting *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997)). Plaintiff must also provide evidence "as to the amount of time the condition existed before the accident." *Kirbaran*, 720 F. Supp. 3d at 277. Courts generally read this test as requiring knowledge of the duration of the hazard. *See Caicedo*, 2026 WL 25367, at *8-9 (outlining the majority approach in the Second Circuit). Still, constructive notice can nonetheless be established on the basis of Defendant's knowledge of a recurring hazard or Defendant's failure to inspect its premises. *See Caicedo*, 2026 WL 25367, at *6.

Here, the display was present for at least one month, and Plaintiff adduces no evidence of a "visible and apparent" hazardous condition. *Id.* (quoting *Walsh v. Super Value, Inc.*, 904 N.Y.S.2d 121, 125 (2d Dep't 2010)). Plaintiff's own visual inspection of the display for "between two and four . . . minutes" yielded no finding of a hazard. (Def.'s 56.1 ¶ 8.) And as Plaintiff cannot identify the alleged hazard with greater specificity than the display as a whole, there was no "visible and apparent hazard" for Defendant to correct. (*See* Grossman Dep. Tr. at 47:16-21); *Walsh*, 904 N.Y.S.2d at 125; *Gordon*, 67 N.Y.2d at 838. Plaintiff makes no showing as to when the dangerous condition appeared, if ever. *See Kirbaran*, 720 F. Supp. 3d at 277-78 (finding no constructive notice where neither party could identify the duration of an alleged slipping hazard's existence); *Ascher*, 522 F. Supp. 2d at 462 (finding speculation as to when a falling hazard existed failed to support plaintiff's claim of constructive notice); *cf. Kelsey v. Port Auth. of New York and New Jersey*, 383 N.Y.S.2d 347, 348 (1st Dep't 1976) (finding constructive notice where the plaintiff testified that the condition existed for at least fifteen to twenty minutes and that the defendant's employees were seen by the

22

plaintiff in the immediate area). Plaintiff makes no argument, and provides no evidence, that this or any other display repeatedly collapsed at Lowe's. Indeed, Plaintiff seems to argue the opposite with respect to RIL—that "shoppers are not usually struck by falling product[s]." (Pl.'s Opp'n at 8.) Additionally, Plaintiff's attacks on Defendant's visual inspections of the display, without any further evidence, fail to create a dispute of material fact. (*Id.* at 7.) For Defendant's part, multiple Lowe's employees testified that they inspected the fencing display the day of Plaintiff's accident. None found any hazards or defects. (*See* Def.'s 56.1 ¶¶ 37, 65; Beyers Dep. Tr. at 34:14-35:10; Coffey Aff. ¶¶ 4-5.) Plaintiff thus fails to establish Lowe's constructive notice of the alleged dangerous condition. *See Gordon*, 67 N.Y.2d at 837.

Plaintiff alleges in her deposition and counterstatement of material facts (to which Defendant did not respond with a counterstatement) that "[s]he heard one of the Lowe's employees say that the display was not assembled properly" and that the employee was, "to her recollection," named "Stephanie." (Pl.'s 56.1 ¶¶ II.19, II.21.; *see* Grossman Dep. Tr. at 53:6-9, 54:24-55:8).

This single line is insufficient to support a finding that Lowe's had actual or constructive notice. While at this stage the court does not weigh evidence or assess credibility, an exception is the "rare circumstance where the plaintiff relies almost exclusively on their own testimony, much of which is contradictory and incomplete." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005). Plaintiff's burden to rebut Defendant's showing of a lack of disputed material facts requires more than "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position." *Liberty Lobby*, 477 U.S. at 252. "One sparse statement . . . in the entirety of the record at summary judgment" is insufficient. *Perez v. Dolgen Corp. of New York Inc.*, 721 F. Supp. 3d 206, 217 (S.D.N.Y. 2024) (denying a triable issue of fact as to existence of a hazard

23

where only a single statement from a plaintiff's deposition supported her theory); *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 726-27 (2d Cir. 2010) (affirming a grant of summary judgment on employment discrimination claims, despite a plaintiff's testimony that her manager purportedly conceded that the employer previously discriminated against the plaintiff).

Accepting the allegation as true, Plaintiff's account of Defendant's alleged concession does not create a genuine issue of disputed material fact. In a record with hundreds of pages of evidence, the allegation only arises once. Plaintiff's own testimony is "incomplete" because she stated several times that she did not remember exactly who the speaker of the statement was— "maybe Stephanie, I'm not sure"—then claimed that the scene was "so chaotic" that she could not remember "if she said anything other than" a request that another employee get ice and water. (Grossman Dep. Tr. at 53:24-54:23); *Jeffreys*, 426 F.3d at 554. Plaintiff afterwards claimed "I believe it was [Stephanie]" that had made the claim, but Plaintiff had "no idea" as to any further details of the alleged misconstruction of the display. (Grossman Dep. Tr. at 55:2-8.) Evidently, Plaintiff's attorneys did not think this was a particularly strong point either. They did not ask Stephanie Beyers about it in her own deposition mere months after Plaintiff's. (*See generally* Beyers Dep. Tr.)

The single statement, lack of corroborating evidence, and its "incomplete" nature all fail to preclude summary judgment for Defendant. *See Jeffreys*, 426 F.3d at 554. Thus, Plaintiff fails to establish a genuine issue of disputed material fact as to Defendant's alleged breach of duty.

### C.  Spoliation

In Plaintiff's briefing, she raises multiple overlapping allegations that Defendant spoliated evidence. (*See* Pl.'s Opp'n at 8-15.) She variously claims that Defendant spoliated surveillance video footage and photographic evidence, while also attempting to

24

relitigate discovery disputes related to the search for video evidence and Defendant's Rule 30(b)(6) deposition. (*Id.* at 10, 12-14.) Plaintiff also asserts Defendant's investigation after the incident in question was inadequate and constitutes further spoliation. (*Id.* at 14.) Plaintiff urges this court to, "at the very least," draw adverse inferences against Defendant as to the allegedly spoliated evidence. (*Id.* at 15.)

Even if granted, the relief that Plaintiff seeks would not disturb the court's finding for summary judgment for Defendant. Only in "borderline cases," in combination with some "not insubstantial" evidence, may an adverse inference defeat summary judgment. *Byrnie v. Bd. of Educ.*, 243 F.3d 93, 107 (2d Cir. 2001), *superseded in part on other grounds by* Fed. R. Civ. P. 37(e) (regarding electronic discovery). Besides, granting adverse inferences at summary judgment has no bearing if the court has already drawn all reasonable inferences in Plaintiff's favor. *See Matteo*, 533 F. App'x at 3-4. Here, Plaintiff has not offered any real evidence in support of her claim beyond speculation. Thus this is not a "borderline case[]." *Byrnie v. Bd. of Educ.*, 243 F.3d at 107. Even after drawing all inferences in Plaintiff's favor, her claim is still wanting. Thus, adverse inferences would not change the court's ruling even if granted.

Even if this were a "borderline case," *id.*, the court rejects Plaintiff's arguments of spoliation. Plaintiff's most serious spoliation allegation—the destruction of video evidence—relies on speculation without an adequate evidentiary basis. The court finds Plaintiff's other allegations to also be without merit.

Plaintiff fails at the first step of the spoliation inquiry: Lowe's duty to preserve such evidence. *Residential Funding Corp.*, 306 F.3d at 107. For video surveillance evidence, "a party's obligation to preserve extends to footage of the accident—put otherwise, the video that recorded [plaintiff's] fall." *Johnson v. Wal-Mart Stores E., LP*, No. 16-CV-1423 (NGG), 2018 WL 401508, at *5 (E.D.N.Y.

Jan. 12, 2018). While the court declines to credit Lowe's representation that no such video evidence of Plaintiff's accident exists,[8] Plaintiff did not produce any evidence showing any likelihood that the accident was actually captured on video. A plaintiff's assertion "that other cameras must have covered the area" of her accident has been rejected where the plaintiff "cite[d] no evidence to support that contention." *See Lacey v. Target Corp.*, No. 13-CV-4098 (RML), 2015 WL 2254968, at *8 (E.D.N.Y. May 13, 2015) (finding no basis to assume as true a plaintiff's conclusion that specific video evidence of a given retail aisle must exist). Here, where plaintiff has "cit[ed] no evidence to support" her theory a camera must have covered the accident, "there is no evidence in the record that [Lowe's] violated its duty to preserve video footage." *Id.*

The court finds Plaintiff's other spoliation claims to be without merit. Plaintiff claims Defendant did not follow its own store procedures that require photos be taken of customer injury incidents. (Pl.'s Opp'n at 10.) However, Plaintiff misrepresents Lowe's testimony. Lowe's corporate representative was unsure of the existence of an internal policy to photograph customer incidents. (*See* Vega Dep. Tr. at 59:11-60:4.) She identified the current procedure to require the gathering of "as much detail[] and information and evidence" as possible. (*Id.* at 60:2-4.) As such, Plaintiff makes no showing that Defendant violated its policy or that such photos ever existed. For spoliation to occur, the

---

[8] (*See* Def.'s Reply at 15 ("[T]he undersigned responded to [P]laintiff's notice to produce with the representation that there was no video footage of [P]laintiff's accident.").) The court does not weigh this testimony in its opinion. "[S]tatements on the matter submitted by [Defendant's] attorney in his papers before the district court cannot by themselves create a factual issue." *United States v. Mottley*, 130 F. App'x 508, 510 (2d Cir. 2005) (summary order); *see also Kulhawik v. Holder*, 571 F.3d 296, 298 (2d Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence.").

relevant evidence must have "actually existed and [been] destroyed." *Skyline Steel, LLC v. PilePro, LLC*, 101 F. Supp. 3d 394, 408 (S.D.N.Y. 2015). Plaintiff has not made that showing here. And in any case, Plaintiff admittedly relies on her own "[p]hotographic evidence," (Pl.'s Opp'n at 5), and both parties agree that two photos show the display at issue after the accident. (*See* Def.'s 56.1 ¶ 18; Pl.'s 56.1 ¶ 18.)

Plaintiff's remaining spoliation arguments seek to reopen discovery disputes as to Defendant's Rule 30(b)(6) witness and again fault the Defendant for failure to produce evidence. (Pl.'s Opp'n at 12-14.) She does so even though she bears the burden to rebut Defendant's showing of an absence of disputes of material fact. *Celotex*, 477 U.S. at 322.

In sum, Plaintiff's spoliation arguments fail to persuade the court. No adverse inference or other sanction is appropriate to preclude summary judgment.

## IV. CONCLUSION

Because Defendant has demonstrated a lack of disputed issues of material fact and an absence of evidence in the record to support necessary elements of Plaintiff's negligence claim, the court GRANTS Defendant's motion for summary judgment. The court also DENIES Plaintiff's request for spoliation sanctions.

SO ORDERED.

Dated:    Brooklyn, New York
          March 30, 2026

                              s/Nicholas G. Garaufis
                              NICHOLAS G. GARAUFIS
                              United States District Judge

27